UNITED STATES NATIONAL BANK OF NEW YORK v. McNAIR & PEARSALL.

*Banks—Negotiable Note—Bona Fide Purchaser.*

Plaintiff bank rediscounted for N. Bank, along with other notes, a note of the defendants (against which the latter claimed an equity) and placed the proceeds to the credit of N. Bank, and before receiving notice of the equity paid checks of N. Bank to the extent of half of the proceeds of such rediscount: *Held*, that plaintiff was a purchaser of such note for value, although between the date of such rediscount and notice of the equity plaintiff had credited other items to N. Bank and at time of such notice owed the latter more than the proceeds of the rediscount.

This was a CIVIL ACTION, tried before *Brown, J.,* and a jury, at January Term, 1894, of the Superior Court of NEW HANOVER.

The plaintiff, the United States National Bank of New York, brought its action against the defendants to recover the sum of $5,000 due by the defendants to it on a promissory note which the defendants, McNair & Pearsall, under date of November 19, 1891, had executed to the First National Bank of Wilmington, N. C., for the sum of $5,000, and payable thirty days after its date, and which said note the said First National Bank of Wilmington had indorsed to the plaintiff for value and before maturity, as plaintiff alleges.

The defendants, McNair & Pearsall, by their answer admitted that the said note had been indorsed before maturity to the plaintiff, but denied, on information and belief, that the plaintiff was a purchaser for value of the note in controversy; and further alleged as a defence a set-off and counter claim, as appears by the answer of the said defendants.

The plaintiff filed a replication to the said answer, as appears by the record.

The following issues were submitted to the jury:

"1. Is the plaintiff a purchaser for value of the note sued on without notice? Answer, No, not a purchaser for value.

"3. What sum, if any, are defendants entitled to recover by way of counter-claim against cause of action sued on? Answer, $4,199.89."

The defendants introduced as a witness in their behalf A. K. Walker, who testified as follows: "I was corresponding clerk of the First National Bank of Wilmington for some months prior to its suspension. The bank suspended on November 25, 1891. I remember the note given by

the defendants to the United States National Bank of New York. Several other notes were sent at the same date, and all were indorsed to plaintiff before they were due. The notes sent in the batch with the note in controversy amounted to $17,000, and none of these had matured. These notes were discounted for the First National Bank of Wilmington by the plaintiff. The First National Bank of Wilmington did business on the 24th day of November, 1891, but did not open its doors on the 25th day of November, 1891."

The defendants' counsel handed a paper to the witness, who stated that the paper is the account current with the United States National Bank.

"The amount of $16,911.33 under date of November 23d on this account is the proceeds of the $17,000 worth of notes which were rediscounted by the said plaintiff bank for the First National Bank, and appears on the account as of the date of 23d November, 1891, and is the last entry on the account as to its position. The amount was placed to the credit of the First National Bank and subject to its sight draft. This account is in the same handwriting as nearly all previous monthly accounts, and came by mail from the plaintiff bank in an envelope stamped 'United States National Bank.' The account runs from November 1, 1891, to November 30, 1891, and the said account, being an exact copy of all of the debits and credits from the 1st day of November to the 30th day of November, 1891, both inclusive, is made a part of this evidence, and marked Exhibit 'A.'" The plaintiff objects to the introduction of this account. Objection overruled. Plaintiff excepts.

"The $17,000 worth of notes, which includes the note in controversy, were sent on November 21, 1891, to plaintiff for rediscount. The United States National Bank was the New York correspondent of the First National Bank and its bank of deposit in New York. The notes amounting to

22

$17,000, among which was included the note sued on, were
sent to plaintiff indorsed by the First National Bank on the
21st day of November, 1891, and I sent them myself that
day.    They left here the night of the 21st by mail and were
the last batch of notes sent by First National Bank before
its failure to the United States National Bank, and in the
course of mail they reached New York on the morning of
November 23d and were discounted and placed to the credit
of the First National Bank on that day.

"According to the account which has been introduced, at
the close of the account, the balance due the First National
Bank on the said account is $21,279.33." The plaintiff
objects to any testimony as to the balance due the First
National Bank of Wilmington by the plaintiff bank on
any day between the 21st day of November, 1891, and the
30th day of November, 1891.    Objection overruled.    Plain-
tiff excepts.

"On the 21st day of November, 1891, the balance due the
First National is $43,387.02; on November 23d, $28,338.75;
on November 24th, $17,586.44; on November 26th, $21,-
640.51; on November 27th, $21,236.04; on November 28th,
$21,370.78.    There were quite a number of First National
Bank checks that were not paid by the First National Bank,
but none were refused payment up to the time that the
First National Bank suspended."

On cross-examination the witness testified that these
accounts current are made out in rough and sent out for
the purpose of ascertaining errors.

"The plaintiff bank was our regular New York corre-
spondent, and at the date the plaintiff discounted the defend-
ants' note for the First National Bank plaintiff's bank
held a large amount indorsed by the First National Bank
which the First National Bank had received money on and

all· of which had been passed to the credit of the First National Bank.

"At the time of the suspension of the First National Bank and up to the 1st of December, when account current was rendered, none of the paper rediscounted by the plaintiff for the First National Bank had become due. I am now satisfied that the plaintiff bank held $48,500 worth of paper and notes indorsed by the First National Bank, including the $17,000 sent on the 21st day of November. All of this had been placed to the credit of the First National Bank before it failed. At the close of business on the 24th day of November, 1891, the defendants had on deposit the sum of $4,199.89 in the First National Bank."

The plaintiff introduced the depositions of J. H. Parker, H. C. Hopkins and J. J. McAuliffe.

This is all the evidence introduced by either party at the trial, and there was no other evidence as to the discounted paper held by plaintiff, nor as to how much of it had been collected.

The Court charged the jury as follows:

"This is an action brought by plaintiff to recover on a note for $5,000 set out in the complaint. This note, it is admitted, was payable to the First National Bank of Wilmington and indorsed by it to plaintiff and discounted by plaintiff on the 23d of November, 1891. It is admitted that said note with others amounting in all to $17,000 were mailed to plaintiff on November 21, 1891, and discounted by plaintiff on 23d; and on that date the proceeds were placed to the credit of the First National Bank on the books of plaintiff, to-wit, $16,911.33.

"It is admitted that at the time said note was discounted and proceeds placed to the credit of the First National Bank the defendants had on deposit in latter bank $4,199.89,

and that said sum was still due defendants by said First National Bank when it suspended on November 25, 1891; and that it has never been paid. There is no evidence that plaintiff had notice of this deposit.

"An account rendered by plaintiff to First National Bank is in evidence. It is not denied that this identical account was rendered by plaintiff to said First National Bank.

"On said account it appears that the First National Bank was credited November 23, 1891, with an item of discount, $16,911.33. It is not denied that this item is composed of the batch of papers aggregating $17,000, and that defendants' note for $5,000 was one of the notes discounted and composing that item. It appears on the account that the only other items received by plaintiff and credited said First National Bank after the 23d and after the entry upon said account of the $16,911.33 item was one upon the 24th of $3,167.21; one upon 25th of $7,161.74; one upon 25th of $1,992.33; one upon 30th of November of $30, and one same date $110.89. The account then closes, showing balance due First National Bank of $21,279.33. This shows that the proceeds of the discount of defendants' note, although credited on plaintiff's books, has never been paid out by plaintiff.

"The evidence shows that plaintiff held a large amount of paper indorsed by First National that had not then matured. There is no evidence that plaintiff has failed to collect any of such paper except the notes sued on.

"Upon this state of facts and upon the entire evidence the Court is of the opinion that you should answer first issue, 'No.'

"The Court is of the opinion that defendants may plead their deposit in First National Bank as a set-off and counter-

claim against their note sued on—there being no evidence that the plaintiff has paid the said money to the receiver.

"It is admitted that plaintiff received defendants' letter and also the telegram in evidence.

"You should also, upon the undisputed evidence not denied, answer second issue, '$4,199.89.'"

In obedience to the instructions of the Court the jury answered the first issue, "No, not a purchaser for value"; and the third issue, "Yes, sum of $4,199.89."

Motion for a new trial, and the plaintiff assigns as errors:

"1. The error of the Court in allowing the introduction of evidence against the plaintiff's objection.

"2. That his Honor erred in charging the jury 'this shows that the proceeds of the discount of defendants' note, although credited on plaintiff's books, has never been paid out by plaintiff.'

"3. That his Honor erred in charging the jury that 'upon this state of facts and upon the entire evidence the Court is of the opinion that you should answer the first issue No.'

"4. That his Honor erred in charging the jury that the Court is of the opinion that 'defendants may plead their deposit in the First National Bank as a set-off and counter-claim against their notes sued on'; and in further charging the jury that the defendants were entitled to plead a counter-claim in the sum of $4,199.89."

The motion for a new trial was overruled, and from a judgment for defendants plaintiff appealed.

*Messrs. Ricaud & Weill*, for plaintiff (appellant).
*Mr. George Rountree*, for defendants.

CLARK, J.: As between the defendants and the First National Bank of Wilmington the deposit of $4,199.80

would have been a good set-off in an action by said bank on the defendant's note for $5,000. 1 Morse on Bank, section 338, and cases there cited. But it would not be a set-off to an action by the plaintiff if said note was assigned before maturity for value and without notice. The presumption is that it was. It is indeed conceded that the assignment was before maturity and without notice of any equity, but it is denied that the assignment was for value.

It is not controverted that the note was sent by the First National Bank of Wilmington to the plaintiff with other notes, the whole aggregating $17,000, which were on November 23, 1891, rediscounted and the proceeds, $16,911.33, placed to the credit of the Wilmington bank, but no money was paid thereon at that time. If that were all the plaintiff was not a purchaser for value, for it had paid nothing, and to the action by it on the note the defendants could plead the set-off they had against the original payee.

It further appears, however, that the balance to credit of the Wilmington bank on books of plaintiff on close of business on November 23d was $28,338.75, including said credit of $16,911.33. There were subsequent payments to check of the Wilmington bank before notice of defendant's equity, amounting to $19,530.18. There were subsequent credits also, which left a balance due the Wilmington bank on November 28th of $21,279.33. The well-settled rule is that "the first money in is the first money out." *Boyden v. Bank*, 65 N. C., 13. Deducting, therefore, from the $28,338.75 on plaintiff's books, 23d November, to credit of Wilmington bank the $19,530.14 paid out to its order before November 28th, there appears only $8,808.61 of said balance which has not been paid. As the full value of all the notes rediscounted on 23d November was $16,911.33 it follows that $8,102.72 has been paid by plaintiff on said notes.

BANK *v.* DAVIS.

Thus the plaintiff was a purchaser for a valuable consideration, before maturity and without notice. By the law-merchant the defendants cannot · set up this set-off. 1 Daniel Neg. Inst., section 758*b*; *Cromwell* v. *County of Sac*, 96 U. S., 60. It is true if (as has been said) there had nothing passed, and the plaintiff had simply given the payee credit on its books, this would not have made the plaintiff a purchaser for value. *Mann* v. *Bank*, 30 Kan., 412; *Bank* v. *Valentine*, 18 Hun., 417; *Bank* v. *Newell*, 71 Miss., 308. The same might be true if the amount paid was so small as to be merely colorable, or to suggest fraud or notice of defendant's equities.

But here the plaintiff has paid nearly half. The balance is a valid indebtedness of the plaintiff to the Wilmington bank, which passes with its other assets to the receiver of that bank to be collected and applied *pro rata* to all its creditors, including the defendants, who are creditors to the extent of their deposit.                    Error.