## UNITED STATES NATIONAL BANK OF NEW YORK v. S. P. McNAIR.

*Action on Note—Bills and Notes—Commercial Law—Set-Off—Endorsee.*

1. An endorsee of negotiable paper for value before maturity, without notice of any infirmity, takes it clear of all equities and defences between antecedent parties, excepting, only, ( 1 ) when, by statute, the paper is void in whole or in part from its inception; and (2) when the original consideration of the paper is illegal or fraudulent.

2. One who purchases for value before maturity and without notice of any set-offs, several notes, paying one-half of their aggregate face value and giving credit to the endorser for the other half, holds all the notes free from any right of set-off in favor of the maker as to any remaining unpaid.

3. In such case, the fact that the purchaser of the notes may have sued and recovered on part of them, does not deprvie him of the character of a purchaser for value so as to let in the right of set-off as to the others.

4. If a note is not void, illegal or fraudulent, the endorsee who takes it before maturity, for value and without notice, gets the title free from all equities, regardless of how much or little he may have paid for it.

This was a CIVIL ACTION, tried before His Honor, *George H. Brown, presiding Judge*, and a jury, at April term, 1894, of the Superior Court of NEW HANOVER County.

The following issues were submitted to the jury:

"1. Is the defendant indebted to the plaintiff; and if so, in what sum?

"2. Is the note sued on in this action subject to the set-off pleaded in the answer?"

The plaintiff offered in evidence a note for the sum of $2,500.00, dated 21st November, 1891, and due thirty days after date, executed by the defendant, to the First National Bank, of Wilmington, N. C., endorsed to the plaintiff by said First National Bank before maturity. The defendant denied that the plaintiff was a purchaser for value of the said note. The defendant introduced as witness in his behalf Asa Walker, who testified as follows:

"I was corresponding clerk of the First National Bank before its failure. Our correspondent in New York was the plaintiff. The First National Bank repeatedly sent the plaintiff notes for re-discount. The note sued on was endorsed to the plaintiff, and sent on for re-discount with a batch of other notes, aggregating $17,000.00, on the 21st day of November, 1891. These notes were all discounted by the plaintiff, and reported in the account current furnished us by the plaintiff under date of 23d of November, 1891."

The notes so sent are described in a letter from the plaintiff to the First National Bank dated 23d November, 1891, and marked 'Exhibit A.' (Said letter put in evidence.) The account current furnished to the First National Bank by the plaintiff for the month of November, 1891, was

also put in evidence by the defendant. Telegram dated 25th November, 1891, signed H. M. Bowden, to the plaintiff, was also put in evidence. The telegram stated "First National Bank of Wilmington has suspended until further notice." Also telegram from the defendant to the plaintiff, dated 27th November, 1891. The telegram stated "Deposits in First National Bank to set-off note favor Bowden cashier. Can you return note to Bank?" was also put in evidence, the said telegram being a night message.

S. P. McNair testified as follows: "When the First National Bank failed on the 25th day of November, 1891, I had on deposit in said bank, subject to check, $2,683.01."

J. G. Bouey was also called as a witness by the defendant, and the defendant offered to prove by this witness that a note of Boney & Harper's, for the sum of $5,000, was one of the notes in the batch of notes for $17,000 endorsed by the First National Bank to the plaintiff at the same time with the note in suit, and which was sent to the plaintiff on the 21st November, 1891, for re-discount, and was discounted, that suit had been brought thereon by the plaintiff, and since suit had been brought they had paid thereon into Court for the use of the plaintiff the sum of $1,900. This evidence was excluded by the Court upon the plaintiff's objection, and the defendant excepted. This was offered as tending to show that the plaintiff had received back a part of the money which it had paid out on these notes and is not a purchaser for value.

The defendant offered to prove that there was a note of Morris Bear & Bro. for $2,000 also re-discounted in the same batch of notes of 23d November, 1891; that said note was sent out for suit, and suit brought, and it was paid.

This evidence was also excluded, and the defendant excepted. The court instructed the jury that they should

BANK *v.* McNAIR.

answer the first issue—$2,500.00, with interest at the rate of 8 per cent. per annum from the 24th day of December, 1891, till paid ; and answer the second issue, " No."

The jury having returned their verdict in accordance with His Honor's instructions, judgment was rendered as stated in the Record.

The defendant moved for a new trial, and appealed from the refusal, assigning the following errors :

" 1. For that His Honor excluded all the evidence tending to show that the plaintiff had received back part of the money it had actually paid on the discount of the notes, and was not a purchaser for value."

Motion overruled.    Appeal.

The defendant assigned as error on appeal the excluding by the court of all the testimony tending to show that the plaintiff had received back a part of the money which it had actually paid out on the batch of notes referred to and was not a purchaser for value.

Exhibit " A " was as follows :

                            NEW YORK, 23d November, 1891.
WM. S. O'B. ROBINSON. Receiver.
H. M. B. &c.,
        Wilmington, N. C.

We have this day discounted the following notes contained in your favor of the 21st inst., and proceeds of same placed to your credit, as follows :

Boney & Harper, due 12th Dec., '91_____$5,000    $15.83
McNair & Pearsall, due 22d Dec., '91_____ 5,000    24.17
M. Bear & Bro., due 24th Dec., '91_____ 2,000    10.33
S. P. McNair, due 24th Dec., '91_____ 2,500    12.92
B. F. Mitchell & Son, due 23d Dec., '91_____ 2,500    25.42

        Amount of notes_____$17,000
    Less discount at 6 per cent._____ 88.67

                    Proceeds,_____$16,011.33
                    JOHN J. McAULIFFE.

*Messrs. S. C. Weill* and *Shepherd & Busbee*, for plaintiff.

*Mr. George Rountree*, for defendant (appellant).

CLARK, J.: The familiar general rule is that an endorsee of negotiable paper, for value, before maturity, without notice of any infirmity, takes it clear of all equities and defences between antecedent parties, and is of course entitled to recover the full amount of the same, according to its tenor. The exceptions to this rule are, 1. When by statute the paper is void in whole or in part from its inception as for usury. In such cases it is void to the same extent into whosesoever hands it may pass, even if acquired before maturity, for value and without notice, and the sole remedy of the holder for the deficiency is against the endorser. *Ward* v. *Sugg*, 113 N. C., 489, and cases there cited. 2. Where the original consideration of the paper is illegal or fraudulent, or it is taken as collateral security, the right of recovery is restricted to the consideration actually paid by the endorsee before notice of the fraud (*Dresser* v. *Missouri*, 93 U. S., 95,) or the amount of the debt to which it is collateral. *Kerr* v. *Cowen*, 17 N. C., 356. But the exception does not extend further, not

even to cases where the note was issued without any consideration, though it may be purchased by the endorsee for less than its face. *Daniel* v. *Wilson*, 21 Minn., 530. These propositions are also sustained (among a wealth of authorities) by 1 Daniel Neg. Inst. (4th Ed.) Section 758 and 758*b*; *Allaire* v. *Hartshorn*, 1 Zabriskie, 663; *Stalker* v. *McDonald*, 6 Hill, 93; *Edwards* v. *Jones*, 7 Car. & P., 633; *Williams* v. *Huntington*, 6 Am. St. Rep., 477; *Cromwell* v. *County of Sac.*, 96 U. S., 51; *Hubbard* v. *Chapin*, 2 Allen, 328. Still less does the exception extend to a case like the present, in which there was neither fraud nor illegality, and where the note was executed for full consideration and endorsed to the plaintiff before maturity, without notice of set-off, and upon payment of half the purchase money, credit for the balance being entered on the books subject to check by the endorser. To so extend the exception would not only be without precedent, but would impair the freedom of transfer and negotiability which is the distinctive feature of commercial paper, by means of which so large a part of the business of the world is transacted. Could the maker, after rediscount of this paper, by notifying the endorsee that he held a set-off against his note, have prevented the endorser from having its checks for the unpaid balance paid by the endorsee? And wherein does the endorser's insolvency extend the maker's rights in this regard? Has not the receiver the same right to check out this balance that the endorser would have had, if it had remained solvent? But where there is fraud, it is different, and the endorsee could not have paid the endorser's check for the balance after notice. Indeed the same contention as in this case was presented and passed on in *Bank* v. *McNair*, 114 N. C., 335, which concerned this same transaction, and is between the same plaintiff and one of the defendants in that action.

BANK *v.* McNAIR.

There were five notes aggregating $17,000, endorsed at the same time by the First National Bank of Wilmington to the plaintiff and rediscounted by it. In the trial of this action, which is brought on one of said notes, the defendant offered evidence to show that the plaintiff had recovered on two others of this batch of notes $3,900, " as tending to show that the plaintiff had recovered back a part of the money which it had paid out on these notes, and is not a purchaser for value." As the plaintiff paid $8,102 in cash on the purchase of said notes, besides giving the credit for the balance (after deducting discount), the evidence would not in any view have shown that the plaintiff was not still a purchaser for value. If there was part payment the title to the paper passes to the purchaser where there is no fraud, while, if there is fraud, it does not, and the endorsee is only entitled in equity to the payment he has made before notice of the fraud. The plaintiff has a right, as such purchaser, to collect in full all five of the notes, in which event it will owe the First National Bank the $8,808 placed to its credit by reason of the balance due on the purchase of said five notes, but should there be a deficiency in collecting the full amount of all the notes, the plaintiff might off-set such deficiency upon the $8,808 to the credit of the Wilmington Bank; for, by the maturity of the notes without payment, the plaintiff holds a liability against the First National Bank of Wilmington for $17,-000 and interest. The $8,102 in cash, and the credit of $8,808, were on no particular note but on the re-discount value of all five. There is no principle of law that the collection of the notes the plaintiff may be persuaded to sue on first, will exonerate the other notes and enable the makers of the other notes thereupon to plead against the endorsee any sets-off they may have against the payee. Such rule will make the rights of parties depend, not upon

the equal and impartial application of the principles of law to all five notes, but upon the election of the endorsee as to which notes he will be pleased to exhaust first. The plaintiff holds all the notes without liability for sets-off, and any surplus it may collect over and above the cash paid the Wilmington Bank, discount and interest added, will go to the First National Bank of Wilmington to be disbursed in the settlement of its liabilities.

The unpaid purchase money is due the endorser, and not the makers of the note. As to such unpaid balance, there is the right of set-off as between the endorsee and endorser, but not between the endorsee and maker, unless the note is void, illegal or fraudulent. The hardship of the defendant in this case, in not obtaining his set-off, is no greater than in any other case, where a note (as to which there is no fraud or illegality) is assigned before maturity and for value and without notice, though the maker holds sets-off against it.

It can make no possible difference to the maker whether the endorsee paid full value or less, or whether the payment was all cash or partly credit. If the note is not void, illegal or fraudulent, the endorsee who takes it for value, before maturity and without notice, gets the title free from all equities, no matter how much he pays. On the other hand, though he pays full value in cash, he will still be liable to equities, if he did not take before maturity, for value and without notice. These are the three requirements to protect the holder of negotiable paper, and there is no precedent or reason to add as a fourth that the amount must be paid in cash, to the full amount agreed to be paid.

No Error.