CITIZENS' NATIONAL BANK OF CORRY, PA., Appellant, *v.* ABIJAH WESTON, Respondent, Impleaded with Others.

1. PROMISSORY NOTE — BURDEN OF PROOF. Proof that a promissory note was fraudulent as between the payee and makers shifts to a transferee, suing thereon, the burden of proof, and it becomes necessary for him to show not only the payment of value by him, but the circumstances under which he became the holder of the note.

2. TRIAL — INSTRUCTION AS TO BONA FIDES. In an action against the members of a partnership as makers, by the transferee, of a promissory note, an instruction that the jury might consider, as bearing upon the question of plaintiff's status as a *bona fide* holder, the fact that none of its officers or agents took the stand after the burden of proof had been shifted to it by defendant's proof that the note was fraudulent as between the makers and the payee, *held*, in view of the state of the record when defendants rested, not to constitute reversible error.

15

3. INSTRUCTION AS TO BONA FIDES. It is not prejudicial error for the court in such an action, to instruct the jury that in passing upon the question whether plaintiff knew at the time it discounted, for the payee, the note in suit, which was not on interest, that it had been given for the payee's accommodation, they may consider the fact that it had already run one year and seven months before that time and was due in a month thereafter.

4. PARTNERSHIP — NOTICE OF DISSOLUTION. It is reversible error for the court in such an action to instruct the jury, in substance, that the plaintiff, in law, had been notified of the dissolution of the defendant firm where it appears that notice thereof had been communicated to two commercial agencies, that one or two newspapers in the vicinity had published a local item of the dissolution and that printed notices thereof had been sent out by the firm's corporate successor in its business letters; these facts are insufficient to charge the plaintiff, assumed to be a non-dealer with the firm, and thus only entitled to general notice, with notice of its dissolution, since to make a general notice legally effectual the only safe rule is that it be seasonably published in one or more of the newspapers in the immediate vicinity.

5. INSTRUCTION — STATEMENT CONTRARY TO EVIDENCE. It is prejudicial error for the court to charge in such an action that so far as the payee's evidence shows, the plaintiff made no inquiry with reference to the makers or their financial standing except, "he says, they consulted a commercial report," where, during the payee's examination, a letter from the cashier of another bank to the vice-president of plaintiff was introduced, in which the writer stated that the paper of the makers held by the payee was good beyond question, and it was proved that the makers were rated in one commercial report as worth over a million dollars, notwithstanding that the statement had reference to the first considerable discount of the makers' paper made by plaintiff and that the court read the letter to the jury.

*Citizens' Nat. Bank* v. *Weston,* 19 App. Div. 627, reversed.

(Argued January 31, 1900; decided February 27, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 21, 1897, affirming a judgment in favor of defendants entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Alex. Wentworth* for appellant. The uncontroverted evidence showed that the plaintiff discounted the note in suit and became the owner thereof in good faith, in the usual course of business before maturity for full value, and without

notice of any facts affecting its validity. (*C. Nat. Bank* v. *Diefendorf*, 123 N. Y. 191; *Hopkins* v. *Clark*, 158 N. Y. 299.) The plaintiff had no actual knowledge or notice of any defect in the paper or of the relations of the several parties to the paper other than what appeared upon the face of the note itself. There are absolutely no circumstances sufficient to enable the jury to find want of honesty or good faith on the part of the plaintiff in discounting the note in suit. (*Cheever* v. *P.*, etc., *R. R. Co.*, 150 N. Y. 59.) The charge of the court was clearly erroneous and misled the jury. The clear undisputed facts attending the discounting of the first note in August, 1891, show the utmost caution and good faith on the part of the plaintiff, and there is no evidence whatever which, as a matter of law, authorized the jury to come to any other conclusion. (*Cheever* v. *P.*, etc., *R. R. Co.*, 150 N. Y. 59; *A. S. Bank* v. *Savery*, 82 N. Y. 291; *A. E. Nat. Bank* v. *N. Y. B.*, etc., *Co.*, 148 N. Y. 698.)

*J. H. Waring* for respondent. The evidence shows that the note in suit was made and issued without consideration by William W. Weston for Ramsey's accommodation more than eighteen months after Weston Brothers firm had been dissolved, and without the knowledge, consent or authority of the defendant's testator, and as to him it was fraudulently and illegally made and put in circulation. (*Smith* v. *Weston*, 81 Hun, 87; *Gansvoort* v. *Williams*, 14 Wend. 133; *Foote* v. *Sabin*, 19 Johns. 154; *Smith* v. *Weston*, 159 N. Y. 194, 198; *Vosburg* v. *Diefendorf*, 119 N. Y. 357; *C. N. Bank* v. *Diefendorf*, 123 N. Y. 191; *F. N. Bank* v. *Green*, 43 N. Y. 298; *O. N. Bank* v. *Carll*, 55 N. Y. 440; *Nickerson* v. *Ruger*, 76 N. Y. 279.) There was no error in the charge to the jury. (*People* v. *Featherly*, 131 N. Y. 597, 598; *Newell* v. *Bartlett*, 114 N. Y. 399, 405; *Standard Oil Co.* v. *Amazon Ins. Co.*, 79 N. Y. 506, 508; *Vosburg* v. *Diefendorf*, 119 N. Y. 357; *C. Nat. Bank* v. *Diefendorf*, 119 N. Y. 357; *Jewell* v. *Wright*, 30 N. Y. 259.) In the collection of the notes as the plaintiff's agent, Eaton must have known

that Ramsey made the payment; it was his duty to communicate that information to the plaintiff, and the law presumes that he did, and charges the plaintiff with knowledge of anything that he learned while acting for it and in its business. (*Bank of U. S.* v. *Davis*, 2 Hill, 451; *Sutton* v. *Dillaye*, 3 Barb. 529; *Constant* v. *University*, 111 N. Y. 604.) The discounting of one note or one of a series of notes made for Ramsey's accommodation in the name of Weston Brothers before the dissolution and without the knowledge or authority of the respondent's testator, did not make the plaintiff a previous dealer so as to entitle it to actual notice. (*City Bank* v. *McChesney*, 20 N. Y. 240; *Whitman* v. *Leonard*, 20 Mass. 177; Story on Part. § 334; *Ketcham* v. *Clark*, 6 Johns. 144; *Bristol* v. *Sprague*, 8 Wend. 423; *Vernon* v. *Manhattan Co.*, 22 Wend. 183; *Wardwell* v. *Haight*, 2 Barb. 549; *Lovejoy* v. *Spafford*, 93 U. S. 430.)

BARTLETT, J. This is an action upon a promissory note for $3,129.77, dated Olean, N. Y., Dec. 6th, 1891, due Aug. 13th, 1893, payable to the order of G. E. Ramsey at the First National Bank of Olean, and made by the firm of Weston Brothers.

This firm was composed of defendants Abijah Weston, Orrin Weston and William W. Weston. Abijah and Orrin alone defended, and the latter has died pending the action.

The note was indorsed by G. E. Ramsey and others when the plaintiff discounted it for the payee.

The plaintiff is a national bank doing business at Corry, in the state of Pennsylvania, which is located about one hundred miles from Olean.

Weston Brothers were lumber dealers doing business at Weston's Mills, about three miles from Olean; the firm, organized in 1852 or 1853, was very prosperous, and dissolved January 5th, 1892. William W. Weston was the resident partner; Orrin lived part of the time at Weston's Mills and later at North Tonawanda; Abijah resided at Painted Post in this state, one hundred miles from Olean.

The answer, in substance, denies the execution of the note; pleads the dissolution of the firm before the note was executed; alleges that the defendant William W. Weston fraudulently affixed the name of Weston Brothers to the note without any consideration and delivered it to Ramsey, the payee, for his accommodation; that the note was fraudulently antedated, and not used in the business of the firm.

This court has had occasion recently to decide several cases involving the alleged fraudulent use of the name of Weston Brothers, either as makers or indorsers of paper issued by William W. Weston. (*Smith* v. *Weston*, 159 N. Y. 194; *Bank of Monongahela Valley* v. *Weston*, 159 N. Y. 201; *Second Natl. Bank of Elmira* v. *Weston*, 161 N. Y. 520.)

The main question litigated at the trial was whether the plaintiff bank is the *bona fide* holder of the note in suit.

A verdict for the defendants and the unanimous decision of the Appellate Division affirming the judgment entered thereon, leave the plaintiff with all the necessary facts to support the verdict, warranted by the evidence, found in favor of the defendants and not reviewable in this court.

The learned counsel for the plaintiff seeks to secure a reversal of the judgment on the ground that the charge of the trial judge to the jury was misleading and involved manifold legal errors, to the great prejudice of plaintiff's rights.

On the trial the plaintiff made the usual *prima facie* case and rested.

The defendants put on the stand G. E. Ramsey, the payee of the note, and proved by him that the note in suit, although dated December 6th, 1891, was not drawn and signed until July 10th, 1893. He also testified that the note was made in his business; that it was understood between him and William W. Weston that witness was to pay it; that he asked William W. Weston to put the firm name on the note; that he secured William W. Weston for this and other paper of a similar character by a conveyance of real estate, which fact he imparted to the officers of the plaintiff.

Abijah Weston was sworn, and referring to the note in suit

and five others which had been discounted by plaintiff for Ramsey, testified as follows : " I do not know anything about any of these notes that have been spoken of as discounted by the plaintiff's bank; I first heard of them when I was sued; I did not know of them, or any of them, at the time they were executed; I never was consulted in reference to giving them; I never consented in any way to giving them; I knew nothing of the deed executed by Ramsey to William W. Weston; I never was consulted in any way in reference to that transaction; I never consented to it in any way; I never heard of it until this action was begun."

It is upon this clear and uncontradicted evidence that the jury will be presumed to have found, among other things, that this note in suit was fraudulent as between Ramsey, the payee, and the firm of Weston Brothers.

The effect of this evidence was to shift the burden of proof, and it became necessary for the plaintiff to show not only the payment of value, but under what circumstances it became the holder of the note. (*First Natl. Bank* v. *Green*, 43 N. Y. 298; *Vosburgh* v. *Diefendorf*, 119 N. Y. 357; *The Canajoharie Natl. Bank* v. *Diefendorf*, 123 N. Y. 191, 201, 202; *Joy* v. *Diefendorf*, 130 N. Y. 6, 9; *Smith* v. *Weston*, 159 N. Y. 194, 198, 199.)

The plaintiff, after defendants rested, gave no evidence, and the jury must have found, among other facts, that it was not the *bona fide* holder of the note.

We have referred to this evidence, and the shifting of the burden of proof, as having a bearing on the first point in the judge's charge to the jury, which we shall consider.

The plaintiff insists that it was error for the court to charge that, in view of the burden of proof having shifted to the plaintiff, the jury might consider, as bearing upon the question of *bona fide* holder, the fact that none of the officers or agents of the plaintiff took the witness stand. In view of the state of the record when defendants rested, we are not prepared to say that this portion of the charge discloses legal error.

Another alleged error is where the court, calling the attention of the jury to the fact that the note in suit had run one year and seven months before discount, and was due in a month thereafter, told them they could consider this in determining the question of fact.

It appeared the note was not on interest, and the jury were entitled to consider all the facts growing out of the discount as possibly bearing on the question whether plaintiff knew that it was paper issued to the payee for his accommodation. There was no prejudicial error in this part of the charge.

The next exception to the charge presents a serious question.

The judge stated to the jury that Abijah Weston must show the note was fraudulently issued, and he then dwelt in detail upon the facts showing the dissolution of the firm of Weston Brothers before the note was made ; the notices given of the dissolution to former dealers with the firm and the general public.    He pointed out that the fact of dissolution was communicated to two commercial agencies — Dun's and Bradstreet's — and that one or more local newspapers announced the fact that the firm was dissolved.    The judge then charged : " So you see, gentlemen, from the evidence, if you believe the evidence given upon that subject, that the dissolution of this copartnership was quite generally known, and as is ordinarily done and required in the dissolution of a copartnership.    The law does not require upon a copartnership being dissolved notice shall be published in the press.    The law simply requires that in order to relieve the copartnership from future liability that notice shall be given to those with whom they have dealt, and in such a general way as will be likely to reach those who would be otherwise apt to continue credit upon the strength of the copartnership."    The judge then pointed out that there was no direct evidence that any notice of the dissolution had been given the plaintiff.

We shall assume for present purposes, without deciding the point, that the plaintiff was not a dealer with the firm of Weston Brothers, and thus only entitled to general notice of its dissolution.    The trial judge was in error in laying down the

law as to general notice and in stating to the jury under the facts of this case that the dissolution "was made quite generally known and as is ordinarily done and required."

This court in *Bank of Monongahela Valley* v. *Weston* (159 N. Y. 201, 211) held as to non-dealers that the notice to the two prominent commercial agencies was insufficient.

The added facts in this case that one or two newspapers in the vicinity published a local item of the dissolution, and that printed notices thereof were sent out by the firm's corporate successor in its business letters do not distinguish it from the case last cited.

The great weight of authority in this state is to the effect that the only safe rule, in order to make the general notice of dissolution legally effectual, is to seasonably publish it in one or more of the newspapers in the immediate vicinity. (*Lansing* v. *Gaine*, 2 Johns. 300; *Ketcham* v. *Clark*, 6 Johns. 144; *Graves* v. *Merry*, 6 Cow. 701, 705; 2 Bates on Part. § 618; *City Bank of Brooklyn* v. *McChesney*, 20 N. Y. 240; *Austin* v. *Holland*, 69 N. Y. 571; *Natl. Shoe & Leather Bank* v. *Herz*, 89 N. Y. 629; *Elmira Iron & Steel Rolling Mill Company* v. *Harris*, 124 N. Y. 280; 159 N. Y. 201.)

The jury were in substance told that the plaintiff, in law, had been notified of the dissolution of the firm.

There is nothing in the record to warrant this statement; and as the point is most material, we think the charge presents reversible error.

It is further urged that it was error for the court to charge as follows: "So far as Ramsey's evidence shows there was no inquiry made with reference to who those Westons were, or where their place of business was, or what their business was, or where they could be found in case this note was not paid at maturity, or what property they were worth, other than he says they consulted a commercial report."

When Ramsey was giving his evidence the letter of August 19th, 1891, from the cashier of the First National Bank of Olean to the vice-president of the plaintiff was produced, in which the writer stated that the paper Ramsey had, made by

Weston Brothers, was " a No. 1, gilt edge, in fact good beyond question."

The portion of the charge quoted has reference to the first considerable discount of Weston Brothers' paper made by the plaintiff. It is true that the court read this letter to the jury, but it is impossible to say the charge did not tend to divert the minds of the jurors from the force of this letter as an indorsement of Weston Brothers' paper and their general credit, as well as to belittle the effect of plaintiff's officers having consulted a commercial report. It was proved that Weston Brothers in one commercial report were rated as worth over a million dollars.

The jury may have given undue weight to this utterance of the judge.

We think it was prejudicial to the plaintiff.

There are a number of other exceptions to the charge, but we will not consider them in detail, having reached the conclusion there must be a new trial.

We have been much impressed, in reading this lengthy charge of the court to the jury, with the fact that in its general trend it bore heavily against the plaintiff.

The learned and upright judge who delivered it of course did not intend any such effect, but the result was inevitable not only by reason of the errors pointed out, but by calling the attention of the jury to many circumstances, trivial in themselves, that did not tend to establish the bad faith of the plaintiff.

The judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

PARKER, Ch. J., GRAY, MARTIN, VANN, CULLEN and WERNER, JJ., concur.

Judgment reversed, etc.