(89 App. Div. 281.)

CITIZENS' STATE BANK v. COWLES.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. CHECKS—PRESENTATION—REASONABLE TIME—QUESTION OF LAW.

    Where there is no dispute as to the facts, the question of what was a reasonable time for the presentation of a check was one of law.

2. SAME.

    In the absence of bad faith, a check dated in a suburb of New York on June 1st, and transmitted in course of business to Kansas, arriving there on June 8th, is not overdue to such an extent as to put a purchaser on inquiry, or raise a presumption that he knew of any defense existing between the original parties.

3. SAME—FRAUD—EVIDENCE—SUFFICIENCY.

    Where a check was given for a team of horses delivered at the time of delivery of the check, the fact that one of the horses was ill at the time, or subsequently became ill, does not establish fraud.

4. SAME—TITLE OF PURCHASER—EXPLANATION.

    Where no fraud is established between the original parties to a check, there is no obligation on the part of a subsequent owner thereof to explain its ownership.

5. SAME—COURSE OF BUSINESS—BANKS—PURCHASE OF CHECK.

    The fact that a bank purchased a check, instead of receiving it on deposit for collection, is not evidence of a deviation from the usual course of business, such as would justify a conclusion of bad faith on its part.

6. SAME—DEFENSE—BREACH OF WARRANTY.

    A breach of warranty is not a defense to a check in the hands of an innocent purchaser for value.

7. FOREIGN CORPORATIONS—DOING BUSINESS—WHAT CONSTITUTES—INSTITUTION OF ACTION.

> The mere bringing of an action on a negotiable instrument by a foreign bank is not doing business within the state, under the banking law (Laws 1892, p. 1861, c. 689, §§ 31, 32), providing that a foreign corporation shall not transact business in the state without a written certificate from the Superintendent of Banks, and the appointment by such corporation of the Superintendent as its agent for service of process.

Appeal from Special Term.

Action by the Citizens' State Bank against Sarah B. Cowles. From a judgment for plaintiff, and from an order denying a new trial (80 N. Y. Supp. 598), defendant appeals. Affirmed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Justus A. B. Cowles (Charles P. Cowles, on the brief), for appellant.
Louis S. Phillips (Jerome A. Peck, on the brief), for respondent.

WOODWARD, J. The plaintiff in this action is a foreign corporation, located and doing business as a banking corporation in Little River, Kan. The complaint alleges this fact, and that on or about the 1st day of June, 1900, at Port Chester, N. Y., the defendant made her check in writing, dated on that day, and directed the same to the First National Bank of Port Chester, N. Y., and thereby required the said First National Bank to pay to the order of W. W. Miller & Sons the sum of $600, for value received, and delivered the same to the said W. W. Miller & Sons. It then alleges that W. W. Miller & Sons indorsed said check to the order of George M. Hoffman, who thereupon indorsed the same, and delivered it, so indorsed, as aforesaid, to the plaintiff for value. The complaint further alleges the putting of the check in process of collection; its presentation and dishonor, with due notice of such dishonor; that the plaintiff is the holder and lawful owner; and that no part of the same has been paid. The answer alleges that the defendant has no knowledge or information as to the identity of the plaintiff, and alleges on information and belief that the plaintiff has not executed and filed with the Superintendent of Banks the instrument in writing required by law, and that the plaintiff has no right or authority to bring the action in this state, and then denies all of the other allegations of the complaint. Further answering, the defendant sets up the transaction which was at the foundation of the check, and alleges on information and belief that the check was not presented at the First National Bank of Port Chester until the 14th day of June, 1900, at which time the said W. W. Miller & Sons, the payees, had notice that payment had been stopped on the check, etc. Upon the trial the defendant was permitted to prove the transaction without objection; the plaintiff merely introducing the check in evidence; the defendant acknowledging the indorsements, etc. There was no dispute as to the facts, and on the motion of the plaintiff the learned trial court directed a verdict in favor of the plaintiff. From the judgment entered upon this verdict, and from an order denying defendant's motion for a new trial, appeal comes to this court.

It appears from the record that the defendant's son entered into a contract with W. W. Miller & Sons for a team of horses, which were to be delivered on the 1st day of June, 1900. The horses were delivered late at night by one of the sons, a member of the firm; and defendant's son, after exacting a written warranty that the horses were in good and sound condition, accepted the team, and delivered defendant's check for $600, the price agreed upon. On the following morning it was discovered that one of the horses was sick, and this illness developed into pneumonia, from which the animal subsequently died. The check was delivered late Friday night, and Monday morning, at the opening of the bank on which the check was drawn, payment was stopped; and what W. W. Miller & Sons (who appear to have been residents of Kansas, temporarily in New York for the purpose of selling horses from their stock farm in the former state) did with the check on receiving it does not appear, but on the 8th day of June it was received by George M. Hoffman, indorsed to his order, at Little River, Kan., where he immediately disposed of it to the plaintiff, which put it in the regular order of collection, and it was presented at the First National Bank in Port Chester on the 14th day of June. There is no evidence in the case that W. W. Miller & Sons knew that the defendant had stopped payment at the time they mailed the check to Kansas, and the contention of the defendant that the same was negotiated at a time when it was open to the defenses which might be urged against W. W. Miller & Sons is without support. There being no dispute as to the facts, the question of what was a reasonable time for the presentation of this check was clearly one of law; and it cannot be said that, in the absence of bad faith, a check dated in a suburb of New York City on the 1st day of June, and transmitted in the course of business to Kansas, arriving there on the 8th day of June, was overdue to such an extent as to put a purchaser upon inquiry, or raise any presumption that he knew of any defense existing as between the original parties. In Massachusetts, where the transaction appears to have been confined to the state, it was held that the mere fact that one in the regular course of business, in good faith, and for value, receives a check on a bank 10 days after it was drawn and dated, does not render him subject to defenses of which he has no notice before or at the time his title accrues. Ames v. Meriam, 98 Mass. 294; First National Bank v. Harris, 108 Mass. 514. And certainly in this case, where the check is sent, with others, into the state of Kansas, where it arrives seven days after its date, to hold that there was an unreasonable delay would be contrary to the authorities. See Fealey v. Bull, 163 N. Y. 397, 403, 57 N. E. 631, and authorities there cited.

The defendant does not set up fraud in her answer, and the evidence does not justify the conclusion that there was any fraud in the inception and issuing of the check. It was given for a valuable consideration, delivered at the time of the delivery of the check; and the fact that one of the horses may have been ill at the time, or that he subsequently became ill, does not establish fraud. The defendant received, in addition to the horses, the guaranty of the vendors that the horses were in good and sound condition, and if they were not, in fact, in good and sound condition, then she has a remedy by way of an

action upon the warranty; and, not having shown any fraud in the check as between the original parties, there can be no obligation on the part of the plaintiff to make any explanation as to its ownership of the check. But the defendant introduced evidence, taken by commission in Kansas—the witnesses being the president and cashier of the plaintiff—which sets forth that the check was purchased by the plaintiff in the regular course of business, that it paid therefor the sum of $600, and that it is out this sum of money unless it can recover in this action. The contention of the defendant that banks do not usually purchase out of town checks, but merely receive them upon deposit for collection, may be true, in a sense, yet it was held in First National Bank v. Harris, supra, that a national bank might purchase checks, and the court adds: "Dealing in checks is also a part of the usual business of banking, and would be within the general powers of a bank, without special mention." So the fact that the plaintiff purchased this check, instead of receiving it on deposit for collection, is not evidence of a deviation from the usual, lawful course of business, such as would justify a conclusion of bad faith on the part of the plaintiff.

If the defendant had established that the check was fraudulently procured from her, it is undoubtedly the law that the plaintiff would be called upon to establish that it not only paid value for the same, but the circumstances under which it became the holder. Citizens' National Bank v. Weston, 162 N. Y. 113, 56 N. E. 494. But in the case now before us there was no fraud. The most that can be said is that there was a breach of the warranty; but this is not a defense to the check in the hands of an innocent purchaser for value, as the evidence supplied by the defendant conclusively establishes the plaintiff to be, aside from the legal presumptions which arise from the mere fact of the plaintiff's possession. See Strickland v. Henry, 175 N. Y. 372, 374, 67 N. E. 611.

The suggestion that the plaintiff, a foreign corporation, cannot bring an action in our courts to recover upon a negotiable instrument without filing the instrument in writing required by the banking law as a condition of doing business within this state is utterly without merit. The mere bringing of an action to recover a sum of money upon a negotiable instrument is not doing business within this state, and section 1779 of the Code of Civil Procedure expressly provides that "an action may be maintained by a foreign corporation, in like manner, and subject to the same regulations, as where the action is brought by a domestic corporation, except as otherwise specially prescribed by law." Sections 31 and 32 of the Banking Law (chapter 689, p. 1861, Laws 1892) do not prescribe any different rule from that laid down in the Code of Civil Procedure, and they have no relation whatever to this case.

The judgment and order appealed from should be affirmed, with costs. All concur.