HANCOCK *v.* STATE NAT. BANK OF TEXARKANA, ARKANSAS.

Feb. 11, 1952.

No. 38201 (56 So. (2d) 819)

Sam Lumpkin, Ramon L. Burgess and Guy Mitchell, Sr. & Jr., for appellant.

Jno. R. Anderson, for appellee.

**Kyle, J.**

The State National Bank of Texarkana, Arkansas, as plaintiff, recovered a judgment in the Circuit Court of Lee County against L. D. Hancock, doing business as L. D. Hancock and Company, defendant, for the sum of $559.92, and from that judgment Hancock prosecutes this appeal.

The action was based upon a check drawn by J. D. Hancock and Company on the Peoples Bank and Trust Company of Saltillo, Mississippi, and payable to the order of C. B. Standridge. The check was dated November 29, 1948, and was endorsed and delivered to the McCollum Candy Company of Texarkana, Arkansas, and was then endorsed by the McCollum Candy Company and delivered to the State National Bank of Texarkana on December 2, 1948, and the full amount of the check was immediately credited to the checking account of the McCollum Candy Company by this bank. The check was then forwarded by the Texarkana bank through regular banking channels to the Peoples Bank and Trust Company for payment. Payment of the check was refused by the Peoples Bank and Trust Company, and the check was returned to the

Texarkana bank on December 13, and written across the face of the check were the words "Payment stopped."

The plaintiff in its declaration alleged that it was the legal holder of the check in due course and for a valuable consideration, and that at the time it acquired title to the check it had no notice of any infirmity in the instrument or any defect in the title of the McCollum Candy Company.

There is no material conflict in the testimony of the witnesses. Standridge was engaged in selling candy which he obtained from the McCollum Candy Company of Texarkana, and which he delivered to the purchasers from a truck. On November 29, 1948, Standridge sold to Hancock a quantity of candy and delivered the same from his truck at Tupelo, Mississippi, and Hancock issued to him the above mentioned check in payment of the purchase price of the candy. Standridge returned to Texarkana on December 2 and endorsed and delivered the check to the McCollum Candy Company, and the McCollum Candy Company immediately endorsed the check and deposited it to its credit in the State National Bank of Texarkana, as stated above. The deposit slip issued by the bank to the McCollum Candy Company had printed on the reverse side thereof the following: "In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. . . ."

Hancock testified that he purchased the candy from Standridge on November 29, and that the candy was immediately delivered to him, but that the candy was packed in large cases and he did not examine it until several days later, when he found that it was in poor condition and was unsalable, and that he stopped payment on the check for that reason. Standridge, after complaint had been made about the candy, came back to Tupelo, took up the candy, and agreed to return the check which had been issued to him for the candy.

W. B. Oglesby, Vice President of the Texarkana bank, testified in answer to interrogatories propounded to him, that on December 2, 1948, the McCollum Candy Company was in serious financial straits; that when the check was presented to his bank by the candy company for credit on that date the bank teller referred the matter to him, and that, after examining the credit rating of the drawer of the check he instructed the teller to handle the item and credit it to the account of the McCollum Candy Company so that the company could immediately withdraw the funds or any part thereof; and that the check was therefore purchased by the bank from the McCollum Candy Company by the deposit of the check to the credit of the candy company and by the bank permitting the candy company to make immediate withdrawals against the deposit on the same day. Oglesby testified further that the bank at that time had no knowledge that Hancock was dissatisfied with the candy purchased from Standridge or that he intended to stop payment on the check, and that it was not until a week or more after the check had been returned unpaid that G. C. McCollum stated to him that "it appeared he would have to refund the amount of this check but that he did not have the money." Oglesby stated further that "In view of McCollum Candy Company's financial condition, we certainly would not have given McCollum Candy Company immediate credit for this item and allowed it to check against the proceeds if we had had any such notice or information that the maker, L. D. Hancock & Company, would not honor it when we had it presented for collection in the ordinary course of our business."

The McCollum Candy Company had on deposit with the bank on December 2, $441.66. The amount of the check deposited was $559.92. On the same day checks aggregating the sum of $859.82 were paid from the account, leaving a balance at the close of business on that day of $141.76. The bank ledger sheets showing the details of the checking account of the McCollum Candy

Company during the month of December were introduced in evidence and showed that other deposits were made to the credit of the account on December 3 and December 6, and that checks aggregating the sum of approximately $4,150.00 were paid by the bank and charged against the account during the 10-day period from December 3 to December 13, the day on which the bank received notice that the Hancock check had been dishonored. The balance on deposit December 13 was $139.68. Oglesby testified that he had received information by telephone or otherwise prior to December 13 that two other checks aggregating the sum of $2,000.00 drawn on a bank in Cleveland, Ohio, which had been credited to the account of McCollum Candy Company, were being returned unpaid, and that on December 27 the bank closed the account by a bookkeeping entry of a credit of $2,428.27, which was charged against the bank's general account of "Losses and Recoveries."

At the conclusion of the testimony the plaintiff and the defendant each made a motion for a peremptory instruction. The motion of the defendant was overruled and the motion of the plaintiff was sustained. The jury under the instruction of the court returned a verdict for the plaintiff and judgment was entered thereon.

In their briefs the attorneys for the appellant argue two points on this appeal: (1) That the appellee was not a holder in due course because the check was overdue when deposited; and (2) that the appellee accepted the check for collection only, and should not have been permitted to vary or contradict the written agreement on the back of the deposit slip by offering proof to show that the McCollum Candy Company was permitted to make immediate withdrawals against the account.

We do not think that the check was overdue when it was accepted by the appellee on December 2. Section 227, Code of 1942, provides that "A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability

thereon to the extent of the loss caused by the delay.''
And Section 234, Code of 1942, provides that: ''In deter-
mining what is a 'reasonable time' or an 'unreasonable
time' regard is to be had to the nature of the instrument,
the usage of trade or business if any with respect to
such instruments, and the facts of the particular case.''

We have in this case no question as to the discharge of
an endorser by delay in the presentation of the check for
payment, or as to a loss sustained by the drawer of the
check caused by the failure of the bank on which the check
was drawn after the check was issued and before it was
presented for payment. ██ ██ And in the absence of
any special circumstances, the authorities are practically
uniform in holding that the transferee of a check is not
put upon inquiry and chargeable with notice of possible
equities in the drawer, by reason of the fact that the
check was dated three, four or five days before the date
of the transfer.

In the case of First National Bank of Rochester v.
Harris, 1871, 108 Mass. 514, the Court held that ██ ██
one who receives in the regular course of business in
good faith and for value, within a reasonable time after
date, a check on a bank, drawn payable to order and
endorsed in blank by the payee takes it free from equities
between the original parties of which he had no notice.
And in that case the Court held that where a check on
a bank in Boston was sent from Boston by mail to
Rochester in New York and there bought four days after
its date, and was presented for payment two days after-
wards, the buyer was not subject to equities existing
between the original parties, of which he had no notice,
either on the ground that the lapse of time between the
date of the check and his purchase of it should have put
him upon inquiry, or on the ground of unreasonable delay
in making presentment.

In the case of Citizens' State Bank v. Cowles, 89 App.
Div. 281, 86 N. Y. S. 38, 41, the Court said that where
there is no dispute as to the facts, the question of what

was a reasonable time for the presentation of a check was one of law; and the Court held that in the absence of bad faith, a check dated in a suburb of New York on June 1 and transmitted in course of business to Kansas, arriving there on June 8, is not overdue to such an extent as to put a purchaser on inquiry, or raise a presumption that he knew of any defense existing between the original parties. In that case the Court said: "If the defendant had established that the check was fraudulently procured from her, it is undoubtedly the law that the plaintiff would be called upon to establish that it not only paid value for the same, but the circumstances under which it became the holder. Citizens' National Bank v. Weston, 162 N. Y. 113, 56 N. E. 494. But in the case now before us there was no fraud. ▉▉ The most that can be said is that there was a breach of the warranty; but this is not a defense to the check in the hands of an innocent purchaser for value, as the evidence supplied by the defendant conclusively establishes the plaintiff to be, aside from the legal presumptions which arise from the mere fact of the plaintiff's possession."

In Hudson Boiler Mfg. Co., Inc., v. Cardillo, 106 Misc. 476, 174 N. Y. S. 638, the Court held that the transferee of a check was not put upon inquiry and chargeable with notice of possible equities in the drawer, by reason of the fact that the check was dated four days before date of transfer. In the case of Merchants' & Planters' National Bank of Union v. Clifton Mfg. Co., 56 S. C. 320, 33 S. E. 750, the Court held that a check drawn on Christmas Eve does not become stale in six days, so as to put the bank on inquiry upon its presentation at the end of that period.

The appellant cites the case of Sunflower Compress Company v. Clark, 165 Miss. 219, 144 So 477, 145 So. 617, in support of his contention that a reasonable time for presentment of a check on a bank where the person receiving the same and the bank on which it is drawn are in the same community is not later than the next business

day after it is received. But that case was a case in which the sheriff had received the check in payment of taxes and had been guilty of delay in depositing the check until after the bank had failed four days later; and the Court held that there was an inference of negligence and that the tax collector might be held liable to the extent of the loss caused by the delay in presenting the check for payment. In the case of Moritz v. Nicholson, Sheriff and Tax Collector, 141 Miss. 531, 106 So. 762, which is cited by the appellant in his brief, the Court also had before it a case in which the check had been issued in payment of taxes and the bank on which the check was drawn failed two days later. These cases have no application to the facts presented in the record that we now have before us. Hancock's check was drawn on November 29 and was transferred to the Texarkana bank on December 2. The check at that time was not overdue to such an extent as to put the Texarkana bank on inquiry, or raise a presumption that the bank knew of any defenses existing between the original parties; and there was no unreasonable delay in the presentment of the check for payment.

 The Texarkana bank on the same day that it accepted the check permitted the McCollum Candy Company to withdraw the funds represented by the deposit, and in doing so became a holder for value of the check. Bank of Gulfport v. Smith, 132 Miss. 63, 95 So. 785, 786. In the Bank of Gulfport case the Court said: "In this case under the deposit slip the bank originally received the check for collection under the terms as therein stated. By the issuance of this slip it did not become a holder for value. Subsequent thereto that same day, however, it permitted this exact amount to be withdrawn by the auto company. By this act it waived the right to hold the check only for collection and became a holder for value of the check."

In the case of Branham v. Drew Grocery Company, 145 Miss. 627, 111 So. 155, 158, this Court quoted with ap-

proval the following statement which appears in the A. L. R. case note to Old National Bank v. Gibson, 105 Wash. 578, 179 P. 117, 6 A. L. R. 247:

"Where the one making the deposit of the proceeds of a negotiable instrument upon presenting it to the bank has a regular account upon which he is drawing checks and making deposits from day to day, and the proceeds are credited in such an account, it frequently becomes difficult to decide whether or not he has drawn all or even a part of the proceeds of the particular instrument in question. The courts have, for this purpose, adopted the maxim that 'the first money in is the first money out.' That is, a man may draw out an amount of money equal to the amount he had in the account when he deposited the proceeds, not including the credit of the proceeds, and he will not be considered as having drawn upon the proceeds; but whatever amount he draws in excess of that amount will be held to have been drawn upon the proceeds, even though by later deposits he has kept his account at all times good to an amount equal to or far in excess of the amount of the proceeds. And the depositor is held to have exhausted the credit obtained by the instrument when he has drawn out an amount equal to the amount of its proceeds, plus what he had in the account when the credit was entered, even though before or after drawing, he deposits more than he draws.

"It has been held that a bank which places the proceeds of a negotiable instrument to the credit of the holder in his regular deposit account and honors his checks to the full amount of his account as it stood at the time of the deposit, including the proceeds, before it has notice of any infirmity in the paper, is a holder in due course even though, because of subsequent deposits, there never was a time when there was not in the account sufficient funds to redeem the instrument, the holdings being based upon the theory that 'the first money in is the first money out.' City Deposit Bank v. Green, 1906, 130 Iowa 384, 106 N. W. 942 (see quotation from this case, infra) ; Fox v. Bank of

Kansas City, 1883, 30 Kan. 441, 1 P. 789; Dreilling v. First National Bank, 1890, 43 Kan. 197, 23 P. 94, 19 Am. St. Rep. 126; Farmers' & M. Bank v. Quasebarth, 1919, 104 Kan. 422, 179 P. 300; First National Bank v. McNairy, 1913, 122 Minn. 215, 142 N. W. 139, Ann. Cas. 1914D, 977 (see quotation infra); Merchants' Nat. Bank v. Santa Maria Sugar Co., 1914, 162 App. Div. 248, 147 N. Y. S. 498, affirmed in 1917, 220 N. Y. 732, 116 N. E. 1061; United States Nat. Bank v. McNair, 1894, 114 N. C. 335, 19 S. E. 361; United States Nat. Bank v. McNair, 1895, 116 N. C. [550], 551, 21 S. E. 389; Standing Stone Nat. Bank v. Walser, 1913, 162 N. C. 53, 77 S. E. 1006; Northfield Nat. Bank v. Arndt, 1907, 132 Wis. 383, 112 N. W. 451, 12 L. R. A., N. S., 82.''

In the case of Love, Superintendent of Banks v. Kraft-Phenix Cheese Corporation, 162 Miss. 460, 139 So. 393, 394, which is cited by the appellant in his brief, this Court, in commenting upon the decision in the case of Bank of Gulfport v. Smith, supra, said: ''What the court there decided was that a bank with which commercial paper has been deposited for collection, and which thereafter advances money to the depositor on the faith of the deposit, before notice of infirmities in the paper, becomes the holder of the paper in due course for value.''

There is no conflict in the evidence, and in view of what we have stated above, the appellee had become the holder of the check in due course for value, and the court committed no error in sustaining the appellee's motion for a directed verdict and the judgment of the lower court is affirmed.

Affirmed.

**Alexander, Hall, Lee,** and **Arrington, JJ.,** concur.