WALKER, J., concurring in part; ALLEN, J., concurring in the opinion of WALKER, J.; HOKE, J., concurring in part.
This action was brought by the plaintiff on a (55) note given by defendants to H. P. Reynolds Co. or bearer, at Lexington, N.C. 13 September, 1907, due 30 months after date, with interest, and payable at National Bank of Lexington. The plaintiff acquired the note at its bank in Pennsylvania, 4 May, 1908, and gave $350 credit therefor to H. P. Reynolds on his checking account. The note was indorsed, "For value received, I hereby guarantee payment of the within note at maturity. 4 May, 1908. H. P. Reynolds."
H. P. Reynolds Co. are customers of the plaintiff bank, keeping a checking account there. Plaintiff alleges in the complaint that it took the note as assignee and innocent purchaser for value, before maturity. The note was duly protested for nonpayment, upon presentation at maturity, and plaintiff has since demanded payment thereof of the defendants, but no part thereof has been paid.
The answer admits the execution of the note, but sets up as a defense that its execution was procured by fraud and misrepresentation on the part of the payees, H. P. Reynolds Co., in that (1) they falsely and fraudulently represented to the plaintiff that a number of gentlemen, including J. C. Ripple and others, had agreed to purchase a certain horse and pay therefor the price of $3,400, whereas in fact their agreement with said Ripple, and perhaps others, was that they were not to pay for said horse except out of the profits of the same, which fact was unknown to the defendants and they executed the note in ignorance thereof. There was no proof of this, and it would have been irrelevant in this action.
(2) That said Reynolds Co. falsely represented that the horse which they sold to the defendants and others was an imported German coach and was a reasonable sure foal getter, and they also entered into a written guarantee and warranted the said horse to that effect, when in *Page 46 
fact, as defendants are informed and believe, the said horse was not an imported German coach and was not a reasonably sure foal getter as guaranteed, and tendered the said horse back to Reynolds Co., who refused to accept the same.
(56) The defendants further aver that if the plaintiff is in fact a holder of the note sued on, he did not take same for valuable consideration and without notice of the defenses above set forth.
In the reply the plaintiff sets out that the defendants and ten others, on 12 September, 1907, executed three promissory notes, due respectively in 18, 30, and 42 months after date, with interest from date, aggregating altogether $3,400. That on the next day these two defendants sought the said H. P. Reynolds and proposed that if he would release them from liability as makers on said three notes aggregating $3,400, that they would execute said $400 note, now in suit, which offer was accepted, and the defendants were released from the other three notes, which the plaintiff pleads was a valid arrangement under Revisal, 859.
On the trial the jury found by consent that the note sued on was executed by the defendants in consideration of their release from liability on the three notes executed by them and others, aggregating $3,400, which had been executed on the previous day to said Reynolds Co. for the purchase money of a horse. But this consent was subject to the exceptions as to the ruling of the court as to the competency of the evidence offered as to this issue and excluded by the court.
The jury further found that the plaintiff purchased the note sued on before maturity, for a valuable consideration, and in due course of trade and without notice of any alleged fraud or of any infirmity affecting the validity of said note.
It was in evidence for the plaintiff by depositions of its officers that the note was passed upon in regular course by the finance committee of the plaintiff bank and approved by its board of directors, and it was purchased in good faith for value and without notice of any alleged infirmity. On cross-examination, the officials of the plaintiff bank stated that they paid $350 for the note, that is, that they gave Reynolds credit to that amount on his checking account which he had with the bank. The witnesses for the plaintiff bank were a member of the finance committee and the cashier, whose evidence was full and explicit on these points, and there was no evidence to the contrary. There (57) was testimony as to their good character. Protest of the note at maturity and nonpayment were also shown.
The defendants, in reply, introduced evidence that in the meeting between them and Reynolds the agreement was that this note of $400 *Page 47 
was to be executed in consideration of their release from the $3,400 notes therefore given, and $400 was indorsed upon the said three previous notes as having been paid by them. But they further testified that the $400 note was given with a further agreement that the same contract of guarantee as to the character of the horse was to apply to the new note, and that in that respect the horse was a total failure.
The first exception is because the court excluded the written guarantee given by Reynolds Co. at the time the notes were executed for the $3,400. The defendants also excepted because the court ruled that the $400 notes sued on having been given in consideration of a release of these defendants from the three original notes, he refused to admit the evidence as to the retention of the guarantee as to the character of the horse as a part of the consideration for the note of $400.
The defendant further excepted that the court charged that the only evidence before the jury as to the note being taken for value before maturity and without notice being that contained in the depositions offered by the plaintiff, if it was believed by the jury, it should answer the last issue "Yes."
The contention of the defendants before us was based upon the allegations of "fraud and false representations" and that the plaintiff took the note with notice of "defect in the title."
There was no proof that the horse was not a German coach. While it is alleged in the complaint that Reynolds Co. represented the horse to be a good foal getter, and that as a matter of fact he was totally worthless in that respect, there is no allegation in the complaint that said Reynolds 
Co. knew that the horse was defective, and no proof to that effect was offered.
The new note having been taken in discharge, or compromise, of the liability of the defendants upon the three former notes, evidence as to any false representations or other defects affecting the validity of said prior notes was properly excluded. 6 A. E., 713; Revisal, 859. Also the guarantee accompanying the execution of said (58) prior notes would not be competent, but for the fact that the defendants offered evidence that a part of the consideration of the new $400 note was that it should "retain the same guarantee." It was error in the court, therefore, to exclude such evidence, for if it was believed, such guarantee was a part of the consideration for the new note. But the exclusion of this evidence was harmless error, for such guarantee was an equity and did not accompany the note into the hands of a purchaser for value, without notice and before maturity. The court properly told the jury that the only evidence as to the purchase of the *Page 48 
note was the deposition offered by the plaintiff, and that if it was to be believed, the plaintiff was an innocent purchaser for value, and to answer the last issue "Yes."
The defendants, however, contend that the burden was upon the plaintiff to prove that it actually paid out to Reynolds the $350 which the bank placed to the credit of Reynolds' checking account on 4 May, 1908. It is true that if such money was not checked out by Reynolds, the bank would not be purchaser of the note for value. Under the decisions of this State the rule is, "The first money in, the first money out" (Reid v. Bank, 159 N.C. 101), and the strong presumption is that a credit of $350 placed on the checking account of Reynolds nearly two years before the maturity of the note was drawn out by him. But the case does not depend upon probabilities. Revisal, 2201, defines "What constitutes a holder in due course" as follows: (1) That the instrument is complete and regular upon its face, (2) and the holder acquired it before due, and without notice of previous dishonor. (3) That he took it in good faith and for value. (4) That he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. The uncontradicted evidence of the plaintiff, if believed, filled all the above requirements. The only question which can be raised is as to whether the plaintiff took "for value," inasmuch as it is not shown that the $350 credit given Reynolds on his checking account two years before maturity was actually checked out. In short, the controversy narrows down to the proposition, Upon whom rests the burden (59) of showing or disproving the receipt of the money by the indorser?
Revisal, 2208, provides: "Every holder is deemed prima facie to be a holder in due course." Then there follows this exception, that "When it is shown that the title of any person who negotiated the instrument was defective, the burden is on the holder to prove that he or some other person under whom he claims acquired the title as a holder in due course." But to this exception itself there is the following exception: "But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title." We need not discuss whether these defendants, under the exception to the exception, can take any benefit, because upon the face of the exception itself the burden is shifted to the holder only when "the title of the indorser is defective," and there is no evidence whatever to that effect in this case. In Revisal, 2203 and 2205, reference is made both to "infirmity in the instrument or defect in the title." Revisal, 2208, shifts the burden of proof to the holder only when there *Page 49 
is a "defect of title" pleaded by one whose liability did not accrue prior to such defect. Revisal, 2204, defines a defective title to be when the indorser "obtained the instrument or any signature thereto" by fraud, duress, or force and fear or other unlawful means, or for an illegal consideration, or when he negotiated it in breach of faith or under such circumstances as amount to a fraud." None of these things have been shown in this case. There was no duress, force, fear, illegal consideration, or breach of faith in transferring the note, nor, as we have seen, was there any fraud. The excluded evidence of the defendants, if admitted and believed, merely showed that Reynolds Co. had agreed that the guarantee, given on a separate paper at the time of the execution of the three prior notes, that the horse was reliable as a sure foal getter, was continued as a guarantee collateral to the new $400 note, and there was evidence tending to show that the horse, while he was not shown to be entirely worthless, because he was doubtless a good work animal, did not come up to this guarantee. But the guarantee was the ground of a cross-action for damages for breach thereof, and was an equity which did not attach to the note in the hands of a holder (60) in due course.
Revisal, 2208, made the plaintiff prima facie a "holder in due course," and the exception that the burden is thrown upon the holder to prove that he is a holder in due course applies only when there is a "defect in the title," and the defendants have failed to show that the title was defective by merely showing that the guarantee given by Reynolds Co. as to the character of the horse was broken. They have not shown any fraud or fraudulent representation. They have not shown that the horse was not a German coach horse, and while there is evidence that the character of the horse was not as represented, it has not been alleged nor shown that Reynolds Co. were aware of that fact at the time of the sale nor that the defect may not have accrued subsequently to the sale.
A false representation must be "a false statement of an existing fact known to the payee and intended and calculated to deceive." This has not been shown in the present case. The mere allegation in the complaint that the representation as to the character of the horse did not come up to the terms of the guarantee is not sufficient to throw upon the holder of the note the burden of proving payment when he has testified that he paid for the note and placed $350 to the credit of the indorser in its purchase.Prima facie the holder held in due course, and there is no proof to the contrary, and nothing to rebut the presumption, therefore, that it was a purchaser "for value." Treadwell v. *Page 50 Blount, 86 N.C. 33; Bank v. Bridgers, 98 N.C. 72; Lewis v. Long,102 N.C. 208.
The fact that $350 was less than the face value of the note in no wise contradicts, but rather confirms the evidence that the plaintiff bought the note from the indorser. Farthing v. Dark, 111 N.C. 243. That the indorser guaranteed the note is nothing more than every indorser does when he procures the note of another, with his indorsement, to be discounted.
Revisal, 2172, provides: "Every negotiable instrument is deemedprima facie to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value." Revisal, 2173, provides: "Value is any consideration sufficient to support a simple contract." This note being payable (61) to bearer, was negotiable by delivery. Revisal, 2178; Tyson v. Joyner, 139 N.C. 69.
The law is thus summed up in Selover Neg. Instr., 218: "The original consideration for a negotiable instrument is presumed, and consideration for an indorsement is also presumed, and it follows, as of course, that a holder is presumed to have given value for the instrument, and this presumption is not repelled merely by proof that as between the immediate parties the instrument was without consideration." Here there was at least a partial consideration, for the horse had value, even if he did not come up to the guarantee.
It is also true, as further stated by Selover Neg. Instr., 223, that "The transfer of negotiable paper to a bank in consideration of credit upon its books, which credit is not absorbed by an antecedent indebtedness, or exhausted by subsequent withdrawals, is not a purchase in the ordinary sense of the term." But the presumption that the instrument was issued for a valuable consideration (Revisal, 2172) and that the holder gave value (Revisal, 2201 and 2208), being presumptions in favor of the holder, they must be rebutted by the defendant. The "holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of these instruments to the full amount thereof against all parties thereto." Revisal, 2206, and numerous cases cited in Pell's Revisal under that section.
In Joveshof v. Rockey, 109 N.Y. Sup., 818, it is held upon the section of the Uniform Negotiable Instruments Law (which is our Revisal, 2172), providing that negotiable instruments shall be deemed to have been issued for a valuable consideration, and the section (which is our Revisal, 2176) making failure of consideration a matter of defense *Page 51 
against any person not a holder in due course, the burden is on the defendant, even in such cases, to show want of consideration. The Court says that whatever might have been the difference in the decisions prior to the Uniform Negotiable Instruments Law, it is now well settled that "the presumption that the indorser of a negotiable note is a (62)bona fide holder is not repelled merely by proof that the paper, as between the immediate parties, was without consideration," citing to that effect Mitchell v. Baldwin, 84 N.Y. Sup., 1043; Harger v.Worrall, 69 N.Y. 370; 25 American, 206. To the same effect are the hundreds of decisions collected 7 Century Digest, Bills and Notes, secs. 1653 and 1654.
In Voss v. Chamberlain, 139 Iowa 569, it is held: "The transferee of negotiable paper regular on its face is presumed to be a holder in due course, and this presumption is not overcome by a mere showing that the title of the party transferring the same was defective, but those questioning his title are charged with the burden of proving his lack of good faith in acquiring it, for when one of two innocent parties to negotiable paper must suffer by the wrongful act of a third person, the one who has made the wrongful act possible must bear the loss," citing numerous authorities. Indeed, this principle is of almost universal application.
In Shirk v. Mitchell, 137 Ind. 194, the principles applicable are thus clearly summed up, with citation of numerous authorities: (1) When it is alleged and shown that a negotiable instrument was procured to be executed by fraud, it is incumbent upon the holder to prove that he is a bona fide
holder for value; but (2) when the defense pleaded and proved is a failure of consideration, or a breach of warranty, the defendant has the burden of the issue to prove that the holder took it with notice of the defense thereto. This was the law prior to the adoption of the Uniform Negotiable Instruments Act, which is more decisively in favor of the holder, as above shown.
It is true, as we have already said, that if it is shown that the bankmerely gave the indorser credit on his checking account, and that the moneyhas not been checked out, the presumption is rebutted. But the burden is onthe defendant to show this. Bank v. McNair, 114 N.C. 342; s. c.,116 N.C. 554; Reid v. Bank, 159 N.C. 101; Boyden v. Bank, 65 N.C. 13.
There is nothing to the contrary of the above decisions in ManufacturingCo. v. Summers, 143 N.C. 102, and Bank v. Fountain,148 N.C. 590, for they merely hold that where there is allegation and proof tending to show that the execution of the note was (63) procured by fraud, the holder must prove that he acquired it in *Page 52 
procured by fraud, the holder must prove that he acquired it in due course. But in this case there is no allegation, or proof, as to the execution of the $400 note sued on, beyond the fact that it was given in compromise and release of liability on prior notes for $3,400 and an offer to show that an agreement that this note should hold the same guarantee which the payees had given in regard to the character of the horse, which was executed as a collateral paper and part of the contract in the original sale of the horse. And even as to the original contract, there was nothing shown or alleged to prove fraud. There was an allegation that the payees, Reynolds 
Co., represented that this was a German coach horse, but there is no proof that he was not, and while there is evidence that the character of the horse in other respects was not as represented, the mere allegation that it was false, without allegation that the vendors knew it to be false, and even without proof that it was false at that time, constitutes neither fraud nor allegation of fraud, as already said. Besides, as to the new note on which this action is brought, none of these things exist beyond the mere offer of evidence that the defendants were to have the benefit of the guarantee which was given in the original sale of the horse. A breach of this may be ground for an equity to recover damages, which does not attach in the hands of the plaintiff who took this note, without notice thereof before maturity, and for value.
There is a broad distinction between fraud and breach of warranty. The defendants, if well advised, would have placed sufficient reference to warranty in the face of the note.
In Beaman v. Ward, 132 N.C. 68, the well-settled principle is laid down by Walker, J., as follows: "In an action to recover on a negotiable instrument, it is not sufficient for the defendant merely to allege fraud, but the facts constituting the fraud must be alleged."
The defendants rely upon an alleged breach of warranty as to the qualities of the horse. The warranty specifies that if the horse does not come up to the representations, that Reynolds Co. would furnish another one at the same price and quality, upon delivery to them (64) of the one sold. The defendants introduced in evidence the letter of H. P. Reynolds, offering to do this if the present horse was returned to them, which they did not show had been done. This being so, even if Reynolds Co. were the plaintiffs in this action, they could recover, and of course the plaintiff bank can do so, even if it were not a holder in due course.
Furthermore, the law as to the bank may be thus summed up. The plaintiff is presumed to be a holder in due course, unless fraud had been *Page 53 
alleged and put in proof, in which case the burden would be thrown upon the plaintiff to show that it was a holder in due course. Revisal, 2208. But no fraud was properly pleaded and there was no evidence to show it; therefore the plaintiff is entitled to recover as a holder in due course.
The fact that the plaintiff went further, and showed that it gave Reynolds credit on his checking account, raised no presumption of law that the money was afterwards checked out, or that it was not, though the lapse of two years might raise a presumption of fact that it was checked out. But no fraud having been alleged, the burden was not thrown upon the plaintiff to show that the money was checked out. The plaintiff can rely upon the presumption that it was a holder in due course, and it was not required to prove actual payment.
Upon the whole case, we find no reversible error.
No error.
NOTE. — Our Negotiable Instruments Law was formulated by the American Bar Association and has been adopted by 41 States besides the District of Columbia, the territory of Hawaii, and the Philippine Islands; total, 44. Only 7 States, i. e., Maine, South Carolina, Georgia, Mississippi, Texas, Arkansas, and California, and the territories of Alaska and Porto Rico, have so far failed to adopt it. It is important that uniformity shall not be marred by conflicting decisions in the courts of the jurisdictions which have adopted it.