G. OLTMAN ET AL. v. H. H. WILLIAMS ET AL.

(Filed 11 November, 1914.)

1. Vendor and Purchaser—Fraud—Conjecture—Trials—Evidence.

Evidence which raises no more than a mere conjecture of fraud is insufficient to raise the issue; and recommendations which are only commendatory in the sale of a horse, relating to his foal-getting qualities, are insufficient, when they do not materialize, to raise the issue of fraud in the procurement of a note given for its purchase price.

2. Vendor and Purchaser—Contracts—Warranties—Breach—Damages—Conditions—Performance by Purchaser.

Where the vendor brings an action on a note given for a stallion, and the purchaser claims damages on a written warranty of the vendor that the stallion "be at least 60 per cent foal-getter," and if not as represented and returned by a certain date, he would replace it with another or return the purchase money, it is necessary, to maintain his counterclaim, that the defendant shall have performed the conditions required of him and returned the stallion in the time specified.

3. Trials—Issues—Evidence—Insufficiency—Verdict Set Aside—Judgments—Appeal and Error.

When an issue, among others, has been submitted to the jury, upon which there is insufficient evidence, and so held by the trial judge, it is the better practice for the judge to set aside the verdict as to that issue and let the others stand, when such is allowable; but where the judgment rendered in effect sets the verdict to the issue aside, no error will be found on appeal.

APPEAL by defendant from *Lyon, J.,* at June Term, 1914, of ORANGE.

This is a civil action brought to recover on the purchase-money notes given for a German coaching stallion. These issues were submitted to the jury:

1. Did the plaintiffs warrant the horse, as alleged in the answer? Answer: Yes.

2. Was there a breach of said warranty by the plaintiffs? Answer: Yes.

3. Did the defendants offer to return the horse on or before 1 March, 1909? Answer: No.

4. What amount, if any, are the plaintiffs entitled to recover of the defendants? Answer: $432, with interest, towit, $164.16.

5. What amount, if any, are the defendants entitled to recover, of the plaintiffs by way of counterclaim for breach of warranty? Answer: $1,250.

6. Is the $600 note of 13 February, 1908, barred by the statute of limitations? Answer: Yes.

7. Did the defendants, within a reasonable time, offer to return the horse to the plaintiffs? Answer: No.

Upon the coming in of the verdict, his Honor rendered judgment in favor of the plaintiffs for the sum of $432, with interest, as returned by the jury under the fourth issue, being the amount due on one note, and declined to render judgment in favor of the defendants on the fifth issue. The defendants excepted and appealed.

*R. H. Sykes and S. M. Gattis for plaintiffs.*
*Mangum & Woltz, Stern & Swift for defendants.*

BROWN, J. The defendants set up two defenses: first, that the notes were procured by fraud; second, that there was a breach of an express warranty, for which they claim damages.

(1) We agree with his Honor that there was not sufficient evidence of fraud to justify the submission of that issue to the jury. It is well settled that where evidence raises no more than a mere conjecture of fraud or negligence, it is error to submit the issue to the jury. *Maguire v. R. R.,* 154 N. C., 385, and cases cited.

At the time of the sale of the horse the only representations that were made were merely commendatory, and relative principally to the foal-getting qualities of the horse. Such representations could not by any possibility have been made with a knowledge of their falsity, for of all the unfathomable processes of nature, the procreative powers of all animals seem to be the most delicate and mysterious as well as uncertain. In respect to such a matter it was impossible to prophesy with any degree of certainty. These representations could not, therefore, have been made with any knowledge of their falsity.

Besides, it is perfectly manifest that the defendants did not rely upon them, and they were considered no part of the warranty and were not received as such, for the defendants required a written warranty, the

breach of which is the subject of their counterclaim. *Cash Register Co. v. Townsend,* 137 N. C., 652; *Whitmire v. Heath,* 155 N. C., 307; *Unitype Co. v. Ashcraft,* 155 N. C., 63.

(2) The paper-writing is entitled "Guaranty," and contains the following clause:

"The said party of the first part hereby guarantees said imported German coach stallion, named Ellmer, with proper care and handling, and bred to healthy producing mares, to be at least a 60 per cent foal-getter.

"If said horse does not prove to be as represented, the said party of the first part hereby covenants and agrees to replace said horse Ellmer with another German coach stallion equally as good or refund the money to said second party, provided said second party shall return said stallion to said first party in as good health and condition on or before 1 March, 1909, as when said stallion was delivered to said second party."

It is well settled that a party relying upon and setting up a written warranty of quality in the sale of personal property is bound by the terms of that warranty and must comply with them in order to be entitled to redress in an action to recover the purchase price. *Bank v. Walser,* 162 N. C., 54; *Main v. Griffin,* 141 N. C., 43; *Robinson v. Huffstetler,* 165 N. C., 459.

In the last case it is said: "It seems, therefore, to be settled that when there is an express warranty in the sale or exchange of personal property, and it is a part of the contract that the property is to be returned within a specified time, if not as warranted to be, that the complaining party can have no redress by reason of the warranty in the absence of fraud without offering to return the property within the time named."

The contract of warranty in *Piano Co. v. Kennedy,* 152 N. C., 196, is very similar to the warranty in this case. In that case it is said that "A party relying upon and setting up a written warranty of the quality in the sale of personal property and a counterclaim for damages for its breach, in an action by the seller for the purchase money, is bound by the terms of the warranty, and must comply with them in order to recover," citing 30 A. and E. Enc. Law, p. 199. See, also, *Main v. Field,* 144 N. C., 307; *Mfg. Co. v. Lumber Co.,* 159 N. C., 510; *Walters v. Ackers,* 101 S. W., 1179 (Kentucky); *Wilson v. Ward,* 159 Ind., 21; *Wisdom v. Nicholls,* 97 S. W., 18 (Kentucky).

As we construe this contract, it was obligatory and not discretionary with the defendants to return the horse to the plaintiffs on or before 1 March, 1909, in order that the plaintiffs may fulfill their guaranty by replacing the horse Ellmer with another German coach stallion equally as good, or refund the money to the defendants. This construction brings the case clearly within the principle laid down in all the authorities we have cited.

It is true, as contended by the defendants, that the record does not show that his Honor set aside the verdict upon the fifth issue. It would have been better practice for him to have done so; but the judgment that was rendered is tantamount to setting aside the verdict on that issue. His Honor erred in submitting that issue to the jury, as all the evidence proved, and in fact it was not contested, that the defendants did not comply with the terms of the warranty on their part, as was found by the jury.

The judgment of the Superior Court is

Affirmed.