Richards, J.
On December 13, 1911, A. N. Robinson & Son purchased of Bell Brothers a percheron stallion named Idem, and as a part of the contract a written guaranty was made and delivered, reading as follows:
“Guarantee.
“We have this day sold the Percheron Stallion ‘Idem’ No. 78705 (82891) to A. N. Robinson & Son of Bryan, Ohio, in consideration of the sum of Sixteen Hundred Dollars, and we guarantee the said stallion to be a satisfactory sure breeder, pro- *455 condition as he now is and has proper care and exercise.
“If the said stallion should fail to be a reasonably sure breeder with the above treatment, we agree to take the said stallion back, and the said A. N. Robinson & Son agrees to accept another imported Percheron Stallion of equal value in his place, the said stallion ‘Idem’ No. 78705 (82891) to be returned to us at Wooster, Ohio, in as sound and healthy condition as he now is by April 1st, 1913.
“Signed: Bell Bros.
“Accepted: A. N. Robinson.

“Dated at Wooster, Ohio, this Thirteenth day of December, ipn.

“Hoof No.-”
At the same time the purchaser executed and delivered to Bell Brothers two cognovit notes, each in the sum of $800, in payment of the purchase price of the stallion. The notes not being paid, two several actions were brought on them and judgment on each entered pursuant to the authority contained in the instruments. Subsequently Robinson made due application to the court in which the judgments had been rendered to have the same suspended or vacated, setting up certain claimed defenses to the promissory notes, and such proceedings were had that these judgments were suspended or vacated and the defendant Robinson let in to make such defenses as he had. The two actions were consolidated and the defendant filed an answer, and, subsequently, an amended answer and cross-petition.
*456 In this pleading he sets up the guaranty and avers its breach and ensuing damages, and further avers by way of counterclaim, that he maintained a suitable stable and kept and attended said stallion for breeding purposes, and that by reason of the failure of the stallion to comply with the terms of the guaranty he was damaged in the sum of $1800. He further avers as a second counterclaim that the stallion was not a satisfactory sure breeder, nor a reasonably sure breeder, as guaranteed, and that had he been as warranted the defendant would have received for the services of the stallion the sum of $2700 and more, and that by reason of the failure of the stallion to comply with the terms of the guaranty he was damaged in the sum of $1800. The defendant in his pleading further sets up that after the judgments were taken on the cognovit notes executions were issued thereon and levied upon a certain other stallion owned by him, and that by direction of the plaintiffs the same was taken possession of by the sheriff and placed and kept in a livery stable for a long period of time, and was thereupon sold to pay the expenses of his keeping. He avers that by reason of these facts he has been damaged in the sum of $1100, for which he asks judgment.
The trial resulted in a verdict and judgment in favor of the defendant, A. N. Robinson, the jury finding against the plaintiffs and further finding that the defendant Robinson was entitled to recover upon his amended answer and cross-petition the sum of $843.83. This proceeding in error is brought to reverse this judgment, numerous errors being assigned.
*457 The vital and controlling fact in this case is the written contract of guaranty entered into between the parties, and their rights depend very largely upon the proper construction to be placed on that instrument. It is to be expected that much diversity in language will be found in the various guaranties which parties make in the sale of property, and because of this diversity of language various decisions have been rendered which at first sight may appear to be in conflict, but which on a closer examination are seen to turn upon the language of the particular instrument of writing under consideration by the court. The written instrument in this case guarantees that the stallion shall be a “satisfactory sure breeder, provided the said stallion keeps in as sound and healthy condition as he now is and has proper care and exercise.” The contract of guaranty further provides that if the stallion should fail to be a reasonably sure breeder with the above treatment, “we agree to take the said stallion back, and the said A. N. Robinson & Son agrees to accept another imported Percheron Stallion of equal value in his place, the said stallion 'Idem’ * * * to be returned to us at Wooster, Ohio, in as sound and healthy condition as he now is by April 1st, 1913.” This instrument must be supplemented by the fact that evidence was introduced tending to show a subsequent oral agreement between the defendant and Mr. Zogg, a representative of the plaintiffs, by which the guaranty was extended for another year or another season, and some evidence was offered tending to show that the horse was tendered back to Mr. Zogg. The plaintiffs deny that such agreement was made and *458 deny that Mr. Zogg had any authority to make any such agreement or to accept a tender of the horse. The evidence further discloses that the stallion was taken sick and died suddenly on or about July 8, 1914. It is not claimed that the stallion was ever returned by Robinson to Bell Brothers at Wooster, or at any other place.
The plaintiffs insist that, even if the evidence discloses a breach of the guaranty, the defendant can not recover any damages, because of the failure to return the stallion to Wooster and to accept another as provided by the terms of the contract. In the absence of a contract fixing the remedies of a purchaser of property for a breach of guaranty, the law itself provides the remedies to which the purchaser may resort for such breach. No doubt, however, can exist that the parties to a contract of sale, accompanied with a guaranty, have full power to prescribe what course shall be pursued in the event of a breach. The law gives to parties competent to contract as full authority to agree on the course to be pursued in the event of a breach of the same, as it does to make the contract of sale itself, and, if the contract provides conditions to be performed by the buyer in case of a breach, the buyer must comply with such conditions before he can claim damages by reason of the breach. This would seem to be an elementary proposition of law and is sustained alike by reason and authority. Authorities which hold that the buyer has an option to pursue either the remedy named in the contract or other remedies allowed by law in the absence of contract, base their conclusions on contracts that are construed to grant an option to the *459 purchaser. Certainly if the terms of the guaranty are such that the purchaser, in the event of a breach, is not required to return the property, but has an option so to do, then the return of the property would not be a prerequisite to the maintenance of his claim for damages. The principle is well stated in James v. Bekkedahl, 10 N. D., 120, 86 N. W. Rep., 226.
A good illustration of the rule may be found in the case of Oltmanns Bros. v. Poland, 142 S. W. Rep., 653. That was a case involving a guaranty on the sale of a stallion that he should be a satisfactory and sure breeder, provided he had proper care and exercise, and that if he failed to be satisfactory and a sure breeder with the above treatment, the seller agreed to take the stallion back and give to the purchaser another stallion of equal value, provided he was returned to the seller’s barns in as sound and healthy condition as at the time of sale. Unlike the case at bar, the ¿contract did not specifically state that the purchaser agreed to accept another stallion, but nevertheless the court construed the course to be pursued, in the event of a breach, as exclusive, and denied relief to the purchaser without a return of the horse within the time specified. In view of the provisions of the guaranty in the instant case, by which the sellers “agree to take the said stallion back,” and Robinson ■ “agrees to accept another,” there would seem to be no room for doubt as to the interpretation to be placed on the contract under review, in the event of a breach.
The principle is further illustrated by the case of Standing Stone Natl. Bank v. Walser et al., 162 *460 N. C., 53, 77 S. E. Rep., 1006. Cases which hold the buyer has an election of remedies are easily reconcilable when careful attention is given to the language of the guaranty employed in such cases. For instance, the contract in the case of Love & Co. v. Ross et al., 89 Ia., 400, provided that in the event of a breach the purchaser “could” return the stallion. That language, of course, only gives the purchaser the option so to do and does not deprive him of any other remedy.
The contract in the case of Hefner v. Haynes, 89 Ia., 616, 57 N. W. Rep., 421, provided that if the horse did not give satisfaction it “may” be exchanged for another, and this, of course, was held to give an option to the purchaser.
The contract in the case of Eyers v. Haddem, 70 Fed. Rep., 648, was construed by the court to give an option of remedies to the purchaser and it was held that the terms of the contract were such as not to make it obligatory upon the purchasers to return the horse. The court uses this language in the course of the opinion (page 651): “It only
says that upon his delivery to the sellers without cost, if as sound and in as good condition as when purchased, the sellers will replace him with another horse. It is only by construction that any obligation can be put upon the purchasers to return the horse.” The difference between that case and the one at bar is apparent when it is remembered that Robinson “agrees to accept another” stallion. See also Kemp v. Freeman, 42 Ill. App., 500, 501; Rowell v. Oleson, 32 Minn., 288, 290, and McCormick Harvesting Machine Co. v. Fields, 90 Minn., 161.
*461 The difference between the case last cited and the one now under consideration is apparent when it is noticed that in the Minnesota case the provision was applicable only in the event that the machine did not work well, and, as stated by the court on page 164, the provision had no reference to the manner in which the machine was made or the material used or its durability, while in the case now under consideration the provision is specifically made as broad in terms as the language of the guaranty itself.
Many other cases might be cited, but it is unnecessary. The cases are collected and reviewed and the distinctions indicated in a note to Wasatch Orchard Co. v. Morgan Canning Co., 12 L. R. A., N. S., 540.
The language of the contract relating to a return of the stallion in the event of a breach of the warranty is imperative, and, in the absence of a compliance by the purchaser with the provision for a return of the stallion within the time limited, he can not avail himself of the breach when an action is brought to recover the purchase price. The rule as thus announced is clearly enunciated in 35 Cyc., 437, 438.
It is not important to determine the extent of authority invested in Zogg as a representative of plaintiffs, for, if he had full authority, and if the contract for an extension of time was made as claimed by the defendant, still the horse was not returned within the time as thus extended.
On the trial of the case the defendant assumed the burden of 'proof, and having introduced his evidence and rested, the plaintiffs introduced their evidence and rested. Thereupon the plaintiffs *462 moved the court to instruct the jury to bring in a verdict for the plaintiffs, which motion the court, on consideration, overruled. This motion could not properly have been granted unless On all the issues involved the plaintiffs were entitled to a directed verdict. For the reasons already given the plaintiffs would have been entitled to a directed verdict in so far as the claims set forth in the petitions and the first and second counter claims of the defendant are concerned, but it could not be said, as a matter of law, that the defendant was not entitled to any damages on account of the issuance and levy of executions on the other stallion and his sale to pay the cost of his keeping while so held under levy. The court, therefore, committed no error in overruling the motion for a directed verdict. This issue, however, seems to have been given but little attention during the trial of the case. Evidence was offered tending to show that much of the long delay which ensued after the levies before the sale was at the instance and request of the defendant Robinson, and of course he would not be entitled to damages resulting from any delay which he himself brought about. Whether there was any delay and ensuing damage for which the plaintiffs are liable should be left to the jury, under appropriate instructions from the court. On a retrial of the case the only issue for submission to the jury would be the issue arising on this branch of the case.
For the reasons indicated, the judgment will be reversed and the cause remanded for a new trial.

Judgment reversed, and cause remanded.

Chittenden and Kinkade, JJ., concur.